IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


Olive Kaleuati, *individually* )
*and on behalf of the class of* )
*parents and/or guardians of* )
*homeless children in the State* )   Civ. No. 07-00504 HG LEK
*of Hawaii;* Kaleuati Kaleuati, )
III, *individually and on* )
*behalf of the class of* )
*homeless children in the State* )
*of Hawaii by and through his* )
*parent, Olive Kaleuati;* )
Klayton Kaleuati, *individually* )
*and on behalf of the class of* )
*homeless children in the State* )
*of Hawaii by and through his* )
*parent, Olive Kaleuati;* Venise )
Lewis, *individually and on* )
*behalf of the class of parents* )
*and/or guardians of homeless* )
*children in the State of* )
*Hawaii;* Raeana Lewis- )
Hashimoto, *individually and on* )
*behalf of the class of* )
*homeless children in the State* )
*of Hawaii by and through his* )
*parent, Venise Lewis;* Kauilani )
Lewis-Hashimoto, *individually* )
*and on behalf of the class of* )
*homeless children in the State* )
*of Hawaii by and through his* )
*parent, Venise Lewis;* Alice )
Greenwood, *individually and on* )
*behalf of the class of parents* )
*and/or guardians of homeless* )
*children in the State of* )
*Hawaii;* Daniel Hatchie, )
*individually and on behalf of* )
*the class of homeless children* )
*in the State of Hawaii by and* )
*through his parent, Alice* )
*Greenwood;*_____ )

1

```
          Plaintiffs,        )
     vs.                     )
                             )
                             )
Judy Tonda, in her official  )
capacities as the State      )
Homeless Coordinator and the )
State Homeless Liaison for the )
Department of Education, State )
of Hawaii; Patricia Hamamoto, )
in her official capacity as  )
Superintendent of the        )
Department of Education, State )
of Hawaii; Robert McClelland )
in his official capacity as  )
the Director of the Systems  )
Accountability Office for the )
Department of Education, State )
of Hawaii; Karen Knudsen; John )
R. Penebacker; Herbert       )
Watanabe; Breene Y. Harimoto; )
Eileen Clarke; Lei Ahu Isa;  )
Kim Coco Iwamoto; Mary J.    )
Cochran; Maggie Cox; Cec     )
Heftel; Denise Matsumoto;    )
Donna R. Ikeda; Garrett      )
Toguchi, each in his or her  )
official capacity as a member )
of the Board of Education,    )
State of Hawaii; Chiyome     )
Fukino, in her official      )
capacity as Director of the  )
Department of Health, State of )
Hawaii; Does 1-30,           )
                             )
          Defendants.        )
                             )
                             )
                             )
_____)
```

## ORDER GRANTING PLAINTIFFS'
## MOTION FOR CERTIFICATION OF CLASSES

Plaintiffs bring an action for violation of the McKinney-

Vento Act, 42 U.S.C. §§ 11431, *et seq.*, and of the Equal

2

Protection Clause of the Fourteenth Amendment of the United States Constitution claiming Defendants' failed to provide equal access to education for homeless children.  Plaintiffs are homeless children and their parents and guardians who reside in the State of Hawaii.  Plaintiffs move for certification of two classes pursuant to Federal Rules of Civil Procedure, Rule ("Rule") 23(a) and 23 (b)(2); the Student Class, and the Guardian Class.

For the reasons set forth below, Plaintiffs' motion for class certification is **GRANTED**.

## PROCEDURAL HISTORY

On October 2, 2008, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief.  (Doc. 1.)

On November 6, 2007, Plaintiffs filed a Motion for Certification Of Classes.  (Doc. 23.)

On January 14, 2008, Plaintiffs filed a Supplemental Memorandum In Support OF Plaintiffs' motion for certification of classes.  (Doc. 79.)

On January 24, 2008, Defendants filed a Memorandum in Opposition to Plaintiffs' motion for class certification.  (Doc. 89.)

On January 31, 2008, Plaintiffs filed a Reply.  (Doc. 93.)

On February 11, 2008, the Motion for Certification of Classes came on for hearing.

On February 11, 2008, the Court GRANTED Plaintiffs' Motion
for Certification of Classes.  (Doc. 105.)  This order explains
the basis for the granting of the motion.

### BACKGROUND

### The Mckinney-Vento Act

In 1987 Congress enacted the McKinney-Vento Act to provide a
broad range of services and "urgently needed assistance to
protect and improve the lives and safety of the homeless
[individuals and families]."  Pub. L. No. 100-77, 101 Stat. 525
(codified at 42 U.S.C. § 11431 (1988)).  In 2001, Congress re-
authorized a portion of the McKinney-Vento Act as the
McKinney-Vento Homeless Education Assistance Improvements Act of
2001 ("the McKinney-Vento Act").  Pub.L. No. 107-110, Title X, §
1032, 115 Stat. 1989 (codified at 42 U.S.C. § 11301 et seq.).
The re-authorization and amendments to the McKinney-Vento Act
took effect in July, 2002.

Subtitle VII-B, 42 U.S.C. §§ 11431-11435, authorizes the
Secretary of Education to grant funds to financially assist
states with educating homeless children and youths.  States
accepting the funds are required to ensure that each child of a
homeless individual has access to a free and appropriate public
education.  42 U.S.C. § 11431(1).  The purpose of the education
portion of the Act is to "ensure that each child of a homeless
individual and each homeless youth has equal access to the same

4

free, appropriate public education, including a public preschool
education, as provided to other children and youths."  42 U.S.C.
§ 11431 (2004).  Congress stated that "[h]omelessness alone is
not sufficient reason to separate students from the mainstream
school environment."  Id.  "Homeless children and youths should
have access to the education and other services" that are needed
to meet "student academic achievement standards to which all
students are held."  Id.

Under the McKinney-Vento Act, the local education agency is
required to continue a homeless child's education in the school
of origin ("home school") for the duration of homelessness, or
enroll the child in the appropriate public school within the
attendance area of the student's temporary housing ("local
school").  42 U.S.C. § 11432(g)(3)(A)(i),(ii).  Where a homeless
child attends school is to be determined based on his or her best
interest, which requires "to the extent feasible, keep[ing] a
homeless child or youth in the school of origin, except when
doing so is contrary to the wishes of the child's or youth's
parent or guardian."  Id. at § 11432(g)(3)(B)(I).

The McKinney-Vento Act further requires that each homeless
child be provided with services comparable to those offered to
other students who attend the selected school, including
transportation, id. at 42 U.S.C. § 11432(g)(4), and to assist the
parent or guardian of a homeless child in accessing

5

transportation to the selected school.  <u>Id.</u> at § 11432(g)(6)
(A)(vii).  The McKinney-Vento Act requires states accepting the
funds to remove "laws, regulations, practices, or policies that
may act as a barrier to the enrollment, attendance, or success in
school of homeless children and youths . . ."  42 U.S.C. §
11431(2).

**<u>Plaintiffs' Allegations</u>**

Plaintiffs allege that Defendants have violated the
McKinney-Vento Act in several ways, including (1) failing to
identify families as homeless as defined by the Act; (2) failing
to ensure that homeless children have an opportunity to remain in
their schools of origin, and instead forcing them to transfer to
the "local school" in the area in which they stay while homeless;
(3) failing to comply with the parent's choice regarding school
selection by refusing to provide the services necessary, such as
transportation, to accommodate the parent's choice; and (4)
failing to remove barriers when a parent chooses to re-enroll her
child in the home school or transfer her child to the local
school.  Plaintiffs seek declaratory and injunctive relief on
behalf of themselves and the other homeless children and parents
in the State of Hawaii whose McKinney-Vento Act rights are
allegedly being denied by Defendants.

**Putative Classes For Certification**

Plaintiff children have requested that they be certified as representatives of a class comprising all school aged children (as defined by Hawaii law) who were, are or will be eligible to attend Hawaii public schools on or after October 2, 2005 and who (1) have lived, are living, or will live in Hawaii; and (2) during such period have been, are, or will be "homeless" as defined under the McKinney-Vento Act (42 U.S.C. § 11434a(2)) (the "Student Class").

Plaintiff parents and guardians request that they be certified as representatives for the class of all parents, guardians or persons in a parental relationship for children in the Student Class (the "Guardian Class").

Defendants oppose the motion for class certification.

## LEGAL STANDARD

A putative class qualifies for certification if the requirements of Fed.R.Civ.P. Rule 23 ("Rule 23") have been met. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). The burden is on Plaintiffs to provide facts sufficient to satisfy all four requirements of Rule 23(a), and the requirements of at least one of the categories enumerated in Rule 23(b). Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001); Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1308-09 (9th Cir. 1977).

Rule 23(a) requires that all of the following four factors be met: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. Rule 23(a).

A liberal approach is taken in determining whether Plaintiffs satisfy the requirements.  Broad discretion is exercised in weighing the propriety of certifying a particular class.  See Armstrong v. Davis, 275 F.3d 849, 872 n. 28 (9th Cir. 2001)(Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." ); Jordan v. Los Angeles County, 669 F.2d 1311, 1318 (9th Cir. 1982) (class certification decision is within the trial court's discretion). "'Implicit in this deferential standard is recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation.'"  In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004).

A rigorous analysis must be conducted to determine that the requirements of Rule 23 have been met.  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); Chamberlan v. Ford Motor Co., 402 F.3d

952, 962 (9th Cir. 2005).  The determination, however, must not

become a "preliminary inquiry into the merits."  <u>Eisen</u>, 417 U.S.

at 177.  "Although some inquiry into the substance of a case may

be necessary to ascertain satisfaction of the commonality and

typicality requirements of Rule 23(a), it is improper to advance

a decision on the merits to the class certification stage."

<u>Moore v. Hughes Helicopters, Inc.</u>, 708 F.2d 475, 480 (9th Cir.

1983) (citation omitted); <u>see also</u> <u>Nelson v. United States Steel

Corp.</u>, 709 F.2d 675, 679-80 (11th Cir. 1983) (plaintiffs' burden

at class certification entails more than the simple assertion of

commonality and typicality but less than a prima facie showing of

liability); Rule 23, Advisory Committee Notes, 2003 Amendments

(court review of the merits should be limited to those aspects

relevant to making the certification decision on an informed

basis).

**ANALYSIS**

**I.   THE NAMED PLAINTIFFS HAVE STANDING**

This Court is under an independent duty to examine the

standing of the Plaintiffs.  <u>FW/PBS, Inc. v. City of Dallas</u>, 493

U.S. 215, 231 (1990)("federal courts are under an independent

obligation to examine their own jurisdiction, and standing 'is

perhaps the most important of [the jurisdictional]

doctrines.'")(<u>quoting</u> <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984))

(alteration in original).  "Standing . . . is a jurisdictional

9

element that must be satisfied prior to class certification."
LaDuke v. Nelson, 762 F.2d 1318 (9th Cir. 1985).  If the
plaintiff fails to establish standing, the plaintiff may not
"'seek relief on behalf of himself or any other member of the
class.'"  Nelsen v. King County, 895 F.2d 1248, 1250 (9th
Cir.1990) (quoting O'Shea v. Littleton, 414 U.S. 488, 494
(1974)); see also Lewis v. Casey, 518 U.S. 343, 357 (1996)
(holding that the fact "[t]hat a suit may be a class action ...
adds nothing to the question of standing, for even named
plaintiffs who represent a class must allege and show that they
personally have been injured") (internal quotation marks and
citations omitted); Lee v. Oregon, 107 F.3d 1382, 1390 (9th Cir.)
(holding that standing must exist prior to class certification),
cert. denied, 522 U.S. 927 (1997).

Standing includes both constitutional and jurisprudential
considerations.  Lujan v. Defenders of Wildlife, 504 U.S. 555,
560-61 (1992).  Article III of the United States Constitution
requires that the allegedly aggrieved Plaintiffs show that they
have personally suffered some actual or threatened injury in fact
which can be traced to some wrongful or illegal conduct by the
U.S. Coast Guard, and that the injury is likely to be redressed
by a favorable decision.  Valley Forge Christian College v.
Americans United for Separation of Church and State, Inc., 454
U.S. 464, 472 (1982).  Plaintiffs must also assert their own

10

legal interests as the real parties in interest.  <u>Dunmore v. United States</u>, 358 F.3d 1107, 1111-12 (9th Cir. 2004).  In the case of <u>Armstrong v. Davis</u>,  the Ninth Circuit explained:

> In order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining "some direct injury as a result of the challenged statute or official conduct." <u>O'Shea v. Littleton</u>, 414 U.S. 488, 494 . . . (1974). The harm suffered by a plaintiff must constitute "actual injury." [Lewis v. Casey, 518 U.S. 343, 348-49 (1996).]  Moreover, where, as here, a plaintiff seeks prospective injunctive relief, he must demonstrate "that he is realistically threatened by a repetition of [the violation]." [<u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 109 (1983)] (emphasis added)[.]

<u>Armstrong v. Davis</u>, 275 F.3d 849, 860-61 (9th Cir. 2001).

Defendants challenge the standing of the named Plaintiffs, arguing that it is sufficient that Plaintiffs are all currently enrolled in and are attending public school.

Plaintiffs are homeless children and their parents or guardians who allege Defendants have violated their rights under the McKinney-Vento Act.  "[S]tanding is evaluated by the facts that existed when the complaint was filed[.]"  <u>Am. Civil Liberties Union of Nevada v. Lomax</u>, 471 F.3d 1010, 1016 (9th Cir. 2006).  While the named students are currently attending public school, attendance is not the only right that Plaintiffs claim Defendants have violated.  The named Plaintiffs assert they are suffering ongoing harm by the Defendants' alleged failure to provide comparable transportation, and failure to provide the named Plaintiffs with dispute resolution procedures which comply

11

with the statutory requirements of the McKinney-Vento Act.

Plaintiffs also assert the threat of recurring harm because their injuries stem from Defendants' written policies.  As the Ninth Circuit stated in Armstrong, a plaintiff can "demonstrate that such injury is likely to recur ... [by] show[ing] that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy . . . . [W]here the harm alleged is directly traceable to a written policy, there is an implicit likelihood of its repetition in the immediate future."  Armstrong v. Davis, 275 F.3d at 861 (citations omitted.).  Plaintiffs allege an example of such a written policy is found in Defendants' Administrative Rules which prohibit children from attending schools outside their geographic attendance areas.  The Administrative Rules do not contain an exception for homeless children.  Plaintiffs assert the policy violates the McKinney-Vento Act's grant of the right of a homeless child to continue to attend the original school when the child moves outside of the geographic attendance area for the school of origin.  See HAR §§ 8-13-1 to 8-13-10.

The named Plaintiffs are homeless who have moved in the past from shelter to shelter, and allege that they will be moved again, and will suffer the injury of being forced to transfer their children to a new school.  In her declaration, Olive Kaleuati states she believes that she will need to move out of

12

the WCC shelter in July, 2008.  She may be required to transfer her children if she moves outside of Kamaile Elementary's geographic attendance area.  (Olive Kaleuati Decl. ¶¶6, 20, and 28 Doc. 79.)  Named Plaintiff Venise Lewis and her school-aged children have left WCC and she could be required to transfer her children to a new school pursuant to Defendants' Administrative Rules regarding geographic exceptions.  (Lewis Supp. Decl. ¶¶3-4, Doc. 92.)

The named Plaintiffs have alleged sufficient facts to meet the standing requirements.

## II.  CLASS CERTIFICATION

### A. Rule 23(a)

Plaintiffs have the burden of showing the putative classes satisfy the requirements of numerosity, commonality, typicality, and adequacy.  Fed.R.Civ.P. Rule 23(a).

### 1. The Numerosity Requirement Is Satisfied

In order to be certified as a class under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable."  "Impracticable," in this context, is not to be confused with impossible.  Rule 23(a)(1) only requires that, in the absence of a class action, joinder would be "difficult" or "inconvenient."  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964).

It is permissible for the court to rely on reasonable

13

inferences drawn from available facts.  Gay v. Waiters' and Dairy Lunchmen's Union, 549 F.2d 1330 (9th Cir. 1977).  "Plaintiffs need not establish the precise number of potential class members since courts are empowered to make 'common sense assumptions to support a finding of numerosity.' " Nicholson v. Williams, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (quotation marks and citation omitted).

Defendants assert that Plaintiffs cannot identify the size of the class in any reliable manner.  (Opp. at 11, Doc. 89.) Defendants arguments are unpersuasive.

In a June, 2007 Department of Education report entitled "Education for Homeless Children and Youth Program," statistical evidence is presented that 908 homeless children were identified in the public schools of Hawaii in the 2005-2006 school year. (Gluck Decl., Exh. 5 at App. 1-14, Doc. 79-11.)  In comparison, the University of Hawaii's Center on the Family and the Aloha United Way authored a report entitled "Hawaii Kids Count."  The Kids Count report identifies 2,800 children as being homeless in 2006.  (Gluck Decl., Exh. 3 at 3, Doc. 79-8.)  Judy Tonda testified that in the 2007-2008 school year, the Department of Education identified approximately 300 homeless students.  Judy Tonda testified, however, that she received a report from the Homeless Management Information System identifying "a little over 2,000" homeless school-aged children and youths for 2007-2008.

14

The McKinney-Vento Act governs the rights of all school aged homeless children and youths, as defined in 42 USC § 11434a. Systemic practices and policies of the Department of Education alleged to be in violation of the Act affect all the homeless children in Hawaii.  The statistics proffered place the potential number of affected children well over the level where individual suits are practical.

Here, the alleged failure of Defendants to gather data on the number of homeless children is of particular concern.  The Department of Education testimony is that students and their families are not directly asked about their homeless status in order to avoid "stigmatizing" the child.  The Department of Education testimony recited the various oblique ways they attempted to gather information on the number of homeless children in Hawaii, such as asking shelters for the number of children clients.  The shelters often refuse to share the information.  Other groups are not investigated, such as beach dwellers and doubled up families.  Defendants then argue that class certification is not warranted because the size of the class cannot be determined.  It is circular to argue that it is not possible to maintain a class action on behalf of the homeless because the numbers are so few.  The incentive to declare a state of homelessness is not present where the putative class members are not made aware, when registering for school, of the rights

15

provided by the McKinney-Vento Act.  The determination of whether
the requirements of the McKinney-Vento act are being met is
thwarted by Defendants' failure to identify and count the number
of homeless students and to determine what services are owed.

Defendants argue that certification of the putative classes
is not warranted because "[a]ny class must be a class of children
or their parents who currently are not obtaining benefits under
the MVA . . . not individuals who had problems in the past, nor
homeless individuals who might have problems in the future."
(Opp. at 1, Doc. 89.)  Defendants misconstrue the requirements of
Rule 23.

Plaintiffs seeking class certification need not necessarily
demonstrate that each member of a proposed class has in fact had
his or her rights violated by Defendants.  Certification is only
concerned with the commonality, not the apparent merit, of the
claims and the existence of a sufficiently numerous group of
persons who *may* assert those claims.  As the United States
Supreme Court explained in the case of <u>Eisen</u>:

> We find nothing in either the language or history of
> Rule 23 that gives a court any authority to conduct a
> preliminary inquiry into the merits of a suit in order
> to determine whether it may be maintained as a class
> action.

<u>Eisen</u>, 417 U.S. at 177.  <u>See also</u> <u>Lilly v. Harris-Teeter</u>
<u>Supermarket</u>, 720 F.2d 326, 333 (4th Cir. 1983)(class
certification affirmed where plaintiffs *could have* been victims

of an alleged pattern and practice of discrimination).

The allegations in the case pertain to the policies, patterns and practices of Defendants with regard to homeless students and Defendants' alleged violation of portions of the McKinney-Vento Act.  The Act itself establishes classes of persons with rights under the Act.  All persons within such statutory classes may be deemed members of a class of Plaintiffs challenging Defendants' policies and practices that allegedly violate the Act.  In light of the existence of at least several hundred homeless children in the State of Hawaii, the numerosity requirement is met.

Practicality of joinder depends on several factors, including the size of the class, the ease of identifying its numbers, and their geographic dispersion.  See Hewlett v. Premier Salons Intern., Inc., 185 F.R.D. 211, 215 (D.Md. 1997).  Here, the size of the class likely consists of at least several hundred individuals, including students and their families.  While many of the proposed class members may live in shelters, Defendants' analysis is limited to students identified by the state as homeless.  The analysis does not account for the other students in the State of Hawaii who may meet the definition of "homeless" under the McKinney-Vento Act but have not been identified by Defendants.

In Koster v. Perales, the court noted that impracticability

17

of joinder is "even more pronounced" when the plaintiffs are homeless. <u>Koster v. Perales</u>, 108 F.R.D. 46, 50 (E.D.N.Y. 1985) (certifying a class of homeless families who were challenging government policies). "[H]omeless families are frequently homeless for short periods of time; thus, the actual membership of the class is in constant flux." <u>Id.</u> The transience of homeless children in Hawaii makes it impracticable to identify and join them all, and makes individual suits next to impossible.

Plaintiffs have met the burden of proving that joinder of all the persons in the proposed class would be impracticable, and satisfy the numerosity requirement of Rule 23(a)(1).

## 2. The Requirement Of Commonality

Rule 23(a)(2) requires that class members share common legal or factual issues. The commonality element of Rule 23(a)(2) is considered a "minimal burden for a party to shoulder." <u>Lewis Tree Service, Inc. v. Lucent Technologies Inc.</u>, 211 F.R.D. 228, 231, (S.D.N.Y. 2002); <u>see also</u> <u>Doe v. Los Angeles Unified School Dist.</u>, 48 F.Supp.2d 1233, 1241 (C.D.Cal. 1999) ("[W]hen addressing commonality of class members proposed under Rule 23(b)(2), a court may employ a liberal definition of commonality.")

Factual differences among the class members' cases will not preclude certification if the class members share the same legal theory. "Commonality focuses on the relationship of common facts

18

and legal issues among class members." Dukes v. Wal-Mart, Inc.,
509 F.3d 1168 (9th Cir. 2007). See also Venqurlekar v.
Silverline Technologies, Ltd., 220 F.R.D. at 227 (S.D.N.Y. 2003)
("The critical inquiry is whether the common questions are at the
core of the cause of action alleged.") (quotation marks and
citations omitted).  The Ninth Circuit Court explained in Hanlon
v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998):

> Rule 23(a)(2) has been construed permissively. All
> questions of fact and law need not be common to satisfy
> the rule.  The existence of shared legal issues with
> divergent factual predicates is sufficient, as is a
> common core of salient facts coupled with disparate
> legal remedies within the class.

Id. at 1019.

Commonality does not require class members to share all
issues in the suit, but simply a single common issue.  "The
commonality test is qualitative rather than quantitative-one
significant issue common to the class may be sufficient to
warrant certification." Dukes v. Wal-Mart, Inc., 509 F.3d 1168
(9th Cir. 2007) (citing 1 Newberg on Class Actions § 3:10 at
272-74).

Defendants contend that Plaintiffs fail to show that
putative class members similarly suffer violations of their
rights under the McKinney-Vento Act.  (Opp. at 14, Doc. 89.)

The proposed class members all base their claims on the same
source: rights vested under the McKinney-Vento Act.  Plaintiffs
are able to advance a single action.  The Plaintiffs have common

issues of fact and law that affect all class members.  Legally, the Plaintiffs challenge the failure of the Defendants to satisfy statutory and constitutional mandates to ensure homeless children are enrolled and transported to school.  Factually, there are substantial similarities between proposed class members, such as moves from one school attendance area to another due to homelessness and lack of transportation resources to and from school.

Plaintiffs do not seek individualized relief.  Plaintiffs challenge the way the practice and policy of Defendants affects each individual child.  The proposed class members share common questions of law, specifically whether the policies, patterns, and practices of Defendants have violated their McKinney-Vento Act rights.  For example, the proposed class members share in common questions regarding Defendants' alleged failure to identify "homeless" students as such, Defendants' alleged failure to inform them of their rights under the McKinney-Vento Act to remain at their home schools, and Defendants' alleged failure to inform them of or provide them with transportation services.  See Doe v. Los Angeles Unified School Dist., 48 F.Supp.2d 1233, 1241 (C.D.Cal. 1999) ("[U]nder Rule 23(b)(2), commonality exists if plaintiffs [in a civil rights action for declaratory or injunctive relief] share a common harm or violation of their rights, even if individualized facts supporting the alleged harm

or violation diverge [.]"))

Plaintiffs have proven the existence of common issues of fact and law among the putative class and the commonality requirement of Rule 23(a)(2) has been satisfied.

### 3. Plaintiffs' Claims Are Sufficiently Typical

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class"; that is, that each class member makes similar legal arguments to prove Defendant's liability.  Fed.R.Civ.P. 23(a)(3). The typicality requirement is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation.  See Dukes v. Wal-Mart, Inc., 509 F.3d 1168 (9th Cir. 2007)("typicality focuses on the relationship of facts and issues between the class and its representatives").

The Ninth Circuit Court stated in the case of Hanlon that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).  A degree of individuality is to be expected in all cases and does not necessarily defeat typicality.  Id.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the

typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993); see also Marisol A., 126 F.3d at 377 (holding that plaintiffs can meet the typicality requirement where "their injuries derive from a unitary course of conduct by a single system").

Defendants reject the notion that the Plaintiffs are typical of the putative class by pointing out that there are "[q]uestions of fact peculiar to each child" and that "each child's needs are considered on a case by case basis." (Opp. at 15, Doc. 89.)

Plaintiffs' claims arise from the same practices and policies that allegedly give rise to the claims of the putative classes. The class members are also homeless parents and children who allege that the policies and practices of Defendants have denied them their rights under the McKinney-Vento Act. The claims set out a central issue based on the same set of facts, that is whether the Defendants have violated the McKinney-Vento Act and the Constitution by failing to ensure that homeless children receive an education.

The differences are irrelevant to the central issue, which is that the Defendants are allegedly violating the McKinney-Vento Act by such acts as not ensuring enrollment of homeless children in school, and failing to provide a method of mediating disputes between the Department of Education and the homeless family. The

common legal theory and questions in this case are not negated by the differences in the individual class members' claims.

Typicality also requires that the named Plaintiffs be members of the class they represent.  See Falcon, 457 U.S. at 156.  Here, the named Plaintiffs are homeless children and their parents and guardians who have allegedly been denied services they are entitled to because of Defendants' violations of the McKinney-Vento Act.  Plaintiffs' Representatives Are Sufficiently Typical of the Class.

Plaintiffs have adequately satisfied the typicality requirement of Rule 23(a)(3).

### 4. Plaintiffs Provide Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).  The Ninth Circuit Court in Hanlon explained "[t]o satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)(citing Hansberry v. Lee, 311 U.S. 32, 42-43 (1940)).  The fourth factor requires: (1) that the proposed representative Plaintiffs and their counsel do not have conflicts of interest with the proposed class, and (2) that the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  Id.; see also Lerwill

v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

Defendants argue that the named Plaintiffs cannot adequately represent the interests of the proposed classes because Plaintiffs fail to show they have claims in common.  (Opp. at 16, Doc. 89.)

Defendants' contention that the interests of the named Plaintiffs conflict with the interests of the potential members of the class is unavailing.  Plaintiffs seek broad based relief requiring Defendants to ensure the education of homeless children and youths.  The interests of the class members are identical despite the individualized problems of each plaintiff.

Defendants also allege that the rights of the named Plaintiffs' under the Act are no longer being violated, and therefore Plaintiffs do not have standing in the action.  (Opp. at 16, Doc. 89.)  Defendants fail to show how this will cause a conflict of interest.  "[N]either a defense that may be asserted against a particular plaintiff nor the possibility that a plaintiff's claim may become moot will necessarily bar members of the class from obtaining the relief they seek."  Koster v. Perales, 108 F.R.D. 46, 53 (S.D.N.Y. 1985).

Plaintiffs have satisfied the adequacy of representation requirement of Rule 23(a)(4).

**B.   The Requirements Of Rule 23(b) Are Met**

Plaintiffs move to certify the class under Rule 23(b)(2).
Plaintiffs must show that "the party opposing the class has acted
or refused to act on grounds generally applicable to the class,
thereby making appropriate final injunctive relief ... with
respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).[1]

Class certification is warranted where a government entity
refuses to comply with federal law.  See Koster v. Perales, 108
F.R.D. 46, 54 (S.D.N.Y. 1985)(state's alleged failure to provide
emergency shelter to needy and homeless families as mandated by
the Social Security Act would constitute refusal to act on
grounds generally applicable to the class of such families,
satisfying Rule 23(b)(2) with regard to certification of class in
class action seeking injunctive relief).  Actions for injunctive
relief will satisfy the requirements of Rule 23(b)(2) if the
relief sought will benefit the entire class.  See Dukes v. Wal-
Mart, Inc., 509 F.3d 1168, 1193 (9th Cir. 2007)("[T]he district
court acted within its broad discretion in concluding that it
would be better to handle this case as a class action instead of
clogging the federal courts with innumerable individual suits
litigating the same issues repeatedly."); Nicholson v. Williams,
205 F.R.D. 92, 99 (E.D.N.Y. 2001); see also Baby Neal ex rel.

---

[1]The purported class need only satisfy one of Rule 23(b)'s
prongs to be sustainable.  See Zinser, 253 F.3d at 1186.

<u>Kanter v. Casey</u>, 43 F.3d 48, 58 (3d Cir. 1994) (suggesting that Rule 23(b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief").

Defendants argue that certification under Rule 23(b) is improper due to the alleged inability of Plaintiffs to "show that the unknown and uncounted members of the putative class have experienced the same problems under similar circumstances as Plaintiffs." (Opp. at 20, Doc. 89.)  The Court disagrees.

Plaintiffs allege violations of the McKinney-Vento Act that necessarily affect the entire class of homeless children. Plaintiffs have proffered evidence of putative class members who have experienced the same problems as the named Plaintiffs.

Plaintiffs request injunctive relief to remedy alleged system-wide abuses that potentially impact every homeless child in the State of Hawaii.  If the abuses continue, the "unknown" members of the putative classes will be affected in the same manner as the named Plaintiffs.  Class certification is warranted where Defendants' practices and policies are generally applicable to the putative class.

The purpose of Rule 23(b)(2) was explained in the February 28, 1966 Report of the Judicial Conference of the United States transmitting the proposed Rules of Civil Procedure to the

26

Congress.[2]  As the Rules Advisory Committee of the Judicial

Conference noted in the Report:

> *Subdivision (b)(2).*  This subdivision is intended to
> reach situations where a party has taken action or
> refused to take action with respect to a class, and
> final relief of an injunctive nature . . . settling the
> legality of the behavior with respect to the class as a
> whole is appropriate.

Rules Advisory Committee Note, 39 F.R.D. 69, 102 (1966).

Plaintiffs do proffer evidence that Defendants' policies and

procedures have resulted in a deprivation of rights for putative

class members under the McKinney-Vento Act.  Shelter directors

Mari Vermeer, Esther Santos, and Kanani Bulawan state that

Defendants have failed to comply with the requirements of the

McKinney-Vento Act, resulting in problems for other homeless

children.  (Vermeer Decl. at ¶¶ 3-8, Doc. 92-3; Santos Decl. at

6, Doc. 79-4; Bulawan Decl. at 17, Doc. 79-3; Temple Decl. Ex. 1

at 10:3-12:15, Ex. 10 at 8:15-24; Doc. 92-7 and 92-15.)  Shanna

Carvalho, a homeless child who is not a named Plaintiff, also

alleges violations of her rights in her declaration.  (Carvalho

Decl. at 5, Doc. 92-1.)

As the Plaintiffs ask for injunctive relief and predicate

the lawsuit on the actions of Defendants in failing to carry out

the requisites of the McKinney-Vento Act, the requirements of

---

[2]The Rules had been formulated by the Judicial Conference
Advisory Committee on Rules of Evidence and approved by the
Judicial Conference of the United States and by the United States
Supreme Court.

Rule 23(b)(2) are satisfied.

Because the plaintiff has successfully fulfilled the requirements of Rule 23(a) and Rule 23(b)(2), the Court holds that certification of the putative classes is warranted.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for certification of classes is **GRANTED.**

IT IS SO ORDERED.

DATED: February 20, 2008, Honolulu, Hawaii.



_/s/ Helen Gillmor_

Chief United States District Judge

---

Olive Kaleuati, individually and on behalf of the class of parents and/or guardians of homeless children in the State of Hawaii, _et al._, vs. JUDY TONDA, in her official capacities as the State Homeless Coordinator and the State Homeless Liaison for the Department of Education, State of Hawaii, _et al._, Civ. No. 07-00504 HG LEK; ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF CLASSES