WILLIAM H. DURHAM            8145
GAVIN K. THORNTON           7922
LAWYERS FOR EQUAL JUSTICE
P.O. Box 37952
Honolulu, Hawaii 96837
Telephone:  (808) 779-1744
Facsimile:  (808) 522-5909
E-mail:       william@lejhawaii.org
                 gavin@lejhawaii.org


LOIS K. PERRIN                    8065
DANIEL M. GLUCK                7959
LAURIE A. TEMPLE             8716
ACLU OF HAWAII FOUNDATION
P.O. Box 3410
Honolulu, Hawaii 96801
Telephone:  (808) 522-5908
Facsimile:  (808) 522-5909
E-mail:       lperrin@acluhawaii.org
                 dgluck@acluhawaii.org
                 lt@acluhawaii.org


PAUL ALSTON                      1126
ROMAN F. AMAGUIN             6610
STEPHEN M. TANNENBAUM    8397
SHELLIE PARK-HOAPILI         7885
ALSTON HUNT FLOYD & ING
Attorneys At Law, A Law Corporation
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawaii  96813
Telephone:  (808) 524-1800
Facsimile:  (808) 524-4591
E-mail:       palston@ahfi.com
                 rfa@ahfi.com
                 stannenbaum@ahfi.com
                 sph@ahfi.com

*Attorneys for Plaintiffs and the Plaintiff Classes*

CIVIL NO. 07-504 HG/LEK

[CIVIL RIGHTS ACTION]

[CLASS ACTION]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| OLIVÉ KALEUATI, individually and on behalf of the class of parents and/or guardians of homeless children in the State of Hawaii; KALEUATI KALUEATI, III, individually and on behalf of the class of homeless children in the State of Hawaii by and through his parent, Olivé Kaleuati; KLAYTON KALEUATI, individually and on behalf of the class of homeless children in the State of Hawaii by and through his parent, Olivé Kaleuati; VENISE LEWIS, individually and on behalf of the class of parents and/or guardians of homeless children in the State of Hawaii; RAEANA LEWIS-HASHIMOTO, individually and on behalf of the class of homeless children in the State of Hawaii by and through her parent, Venise Lewis; KAUILANI LEWIS-HASHIMOTO, individually and on behalf of the class of homeless children in the State of Hawaii by and through her parent, Venise Lewis; ALICE GREENWOOD, individually and on behalf of the class of parents and/or guardians of homeless children in the State of Hawaii; DANIEL HATCHIE, individually and on behalf of the class of homeless children in the State of Hawaii by and through his parent, Alice Greenwood, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 07-504<br><br>**[CIVIL RIGHTS ACTION]**<br><br>**[CLASS ACTION]**<br><br><br>STIPULATION FOR DISMISSAL WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii) AND 41(a)(2) AND ORDER |
|                  Plaintiffs,<br>    vs. | ) ) ) ) ) | |

JUDY TONDA, in her official capacities )
as the State Homeless Coordinator and the )
State Homeless Liaison for the )
Department of Education, State of Hawaii; )
PATRICIA HAMAMOTO, in her official )
capacity as Superintendent of the )
Department of Education, State of Hawaii; )
ROBERT McCLELLAND, in his official )
capacity as the Director of the Systems )
Accountability Office for the Department )
of Education, State of Hawaii; KAREN )
KNUDSEN, JOHN R. PENEBACKER, )
HERBERT WATANABE, BREENE Y. )
HARIMOTO, EILEEN CLARKE, LEI )
AHU ISA, KIM COCO IWAMOTO, )
MARY J. COCHRAN, MAGGIE COX, )
CEC HEFTEL, DENISE MATSUMOTO, )
DONNA R. IKEDA, and GARRETT )
TOGUCHI, each in his or her official )
capacity as a member of the Board of )
Education, State of Hawaii; CHIYOME )
FUKINO, in her official capacity as )
Director of the Department of Health, )
State of Hawaii; and DOES 1-30, )
                                                              )
                        Defendants. )
_____

      IT IS HEREBY STIPULATED AND AGREED by and between the

parties to this action, through their respective attorneys, that pursuant to

Rule 41(a)(1)(A)(ii) and 41(a)(2) of the Federal Rules of Civil Procedure, this

action and all claims asserted herein by Plaintiffs against any and all Defendants,

be and is hereby dismissed with prejudice, each party to bear any remaining costs

and attorneys' fees other than the amounts already paid pursuant to the Settlement Agreement and Mutual Release ("Settlement Agreement").

The parties stipulate to dismiss this action with prejudice upon the Court's approval of this stipulation and order expressly incorporating herein the terms of the executed Settlement Agreement as follows:

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

Plaintiffs Olivé Kaleuati, Kaleuati Kaleuati III, Klayton Kaleuati, Venise Lewis, Raeana Lewis-Hashimoto, Kauilani Lewis-Hashimoto, Alice Greenwood, and Daniel Hatchie, individually and on behalf of all current and future homeless children and youths and their parents and/or guardians in the State of Hawaiʻi (collectively "Plaintiffs"), and Defendants Judy Tonda, in her official capacity as a resource teacher and the statewide coordinator for the Homeless Concerns Program of the Special Programs Management Section of the Department of Education, State of Hawaiʻi; Patricia Hamamoto, in her official capacity as Superintendent of the Department of Education, State of Hawaiʻi; Cara Tanimura, in her official capacity as Director of the Systems Accountability Office for the Department of Education, State of Hawaiʻi; Karen Knudsen, John R. Penebacker, Herbert Watanabe, Breene Y. Harimoto, Eileen Clarke, Lei Ahu Isa, Kim Coco Iwamoto, Mary J. Cochran, Maggie Cox, Cec Heftel, Denise Matsumoto, Donna R. Ikeda, and Garrett Toguchi, each in his or her official capacity as a member of the Board of Education, State of Hawaiʻi, and Chiyome Fukino, in her official capacity as Director of the Department of Health, State of Hawaiʻi (all current and former Defendants are referred to herein collectively as "Defendants") enter into this SETTLEMENT AGREEMENT AND MUTUAL RELEASE (the "Settlement Agreement") effective as of the Effective Date (as defined below).

Plaintiffs and Defendants (collectively, "the Parties" and each a "Party") enter into this Settlement Agreement with reference to the following facts and understandings:

A.      On October 2, 2007, Plaintiffs filed a Complaint in the United States District Court for the District of Hawaiʻi (Case No. CV 07-504) asserting certain federal constitutional and statutory claims (the "Action").

B.      Nothing in this Settlement Agreement should be construed as an admission of liability by any of the Defendants related to the claims asserted in the Action.

C.      The Parties enter into this Settlement Agreement with the mutual desire and intention to provide all homeless children and youths and/or their parents or guardians with the services to which they are entitled under the McKinney-Vento Homeless Assistance Act, 42 U.S.C. §§ 11431-11435 (the "McKinney-Vento Act) and to resolve Plaintiffs' claims under the Fourteenth Amendment to the United States Constitution.

D.   The Parties to this Settlement Agreement wish to resolve all disputes between them as provided herein.

E.   As used throughout this Settlement Agreement, including Exhibit "A" hereto, the following definitions shall apply:

1.   "BOE" shall mean the Board of Education of the State of Hawai'i and all persons employed by the BOE and all employees, agents, successors, representatives, and all persons in active concert or participation with them in the administration of the affairs of the BOE.

2.   "BOE Defendants" shall mean Defendants Karen Knudsen, John R. Penebacker, Herbert Watanabe, Breene Y. Harimoto, Eileen Clarke, Lei Ahu Isa, Kim Coco Iwamoto, Mary J. Cochran, Maggie Cox, Cec Heftel, Denise Matsumoto, Donna R. Ikeda, and Garrett Toguchi, all persons employed by the BOE, and all employees, agents, successors, representatives, and all persons in active concert or participation with them in the administration of the affairs of the BOE, in their official capacities only.

3.   "Children" shall mean both children and youths, as the terms are used in the McKinney-Vento Act.

4.   "DOE" shall mean the Department of Education of the State of Hawai'i and all persons employed by the DOE and all employees, agents, successors, representatives and all persons in active concert or participation with them in the administration of the affairs of the DOE, in their official capacities only.

5.   "DOE Defendants" shall mean Defendants Judy Tonda, Patricia Hamamoto and Cara Tanimura, and all employees, agents, successors, representatives, and all persons in active concert or participation with them in the administration of the affairs of the DOE, in their official capacities only.

6.   "DOH" shall mean the Department of Health of the State of Hawai'i and all persons employed by the DOH, and all employees, agents, successors, representatives, and all persons in active concert or participation with them in the

administration of the affairs of the DOH, in their official capacities only.

7.   "DOH Defendants" shall mean Chiyome Fukino and all employees, agents, successors, representatives, and all persons in active concert or participation with her in the administration of the affairs of the DOH, in their official capacities only.

8.   "Guardian" shall be given the same definition as in Hawaiʻi Revised Statutes ("HRS") § 560:5-205.

9.   "Homeless children and youths" shall be given the same definition as in 42 U.S.C. § 11434a(2).

10.  "MVA" shall be defined to mean any part of the McKinney-Vento Act, 42 U.S.C. §§ 11431-11435, *et seq.*

11.  "Parent" shall be given the same definition as in HRS § 560:5-102.

12.  "Public schools" shall be given the same definition as in HRS §302A-101.

13.  "State" shall mean the State of Hawaiʻi, unless the text clearly indicates otherwise.

14.  "This case" shall mean *Kaleuati v. Tonda*, Civ. No. 07-504 HG LEK, unless the text clearly indicates otherwise.

15.  "Unaccompanied youth" shall be given the same definition as in 42 U.S.C. § 11434a(6).

**NOW, THEREFORE,** in consideration of the mutual promises and covenants set forth in this Settlement Agreement, the Parties agree as follows:

1.   <u>Effective Date</u>

   a.   The "Effective Date" of this Settlement Agreement shall be the date upon which the last signatory executes this Settlement Agreement.

b.      The validity of this Settlement Agreement shall be subject to the following conditions subsequent:  (1) execution of a separate agreement and release regarding the implementation plan for the Department of Education of the State of Hawaii to comply with the McKinney-Vento Act, attached as Exhibit "A," though if Plaintiffs deem it necessary, however, the Parties shall have until September 1, 2008 to execute said separate agreement and release or this condition subsequent shall expire; (2) inclusion of the material terms hereof in an Order of Dismissal whether under Fed. R. Civ. P. 41(a)(l)(A)(ii) and 41(a)(2) (as set forth in Subparagraph 12 (a) below) or in any other Order of the Court regarding dismissal of the Action.

c.      In the event that this Settlement Agreement, including the terms proposed herein, is not approved by the United States District Court for the District of Hawaiʻi or fails to become effective for any reason, the Settlement Agreement shall be null and void and of no legal effect and Plaintiffs and Defendants shall revert to their respective positions prior to the execution of this Settlement Agreement.

2.      <u>Dismissal of the Action</u>

It is understood and agreed that at the time this Settlement Agreement is fully and finally executed, the Plaintiffs and Defendants will execute and lodge a Stipulation of Dismissal With Prejudice and Order, pursuant to Federal Rule of Civil Procedure, Rule 41(a)(l)(A)(ii) and Rule 41(a)(2), which will set forth this Settlement Agreement (including, but not limited to, Exhibit "A" hereto) verbatim (except for the signature blocks) in Civil No. 07-504 filed in the United States District Court for the District of Hawaiʻi.

3.      <u>Incorporation of Agreement Regarding the Implementation Plan for the Department of Education of the State of Hawaiʻi to Comply with the McKinney-Vento Act</u>

Defendants, in their official capacities only, and on behalf of their agents, their assigns and/or their successors agree to execute and to undertake the obligations set forth in the "Agreement Regarding the Implementation Plan for the Department of Education of the State of Hawaiʻi to Comply with the McKinney-Vento Homeless Assistance Act" which is attached as Exhibit "A" hereto. The Parties agree that Exhibit "A" is incorporated by reference into this Settlement Agreement as if fully set forth herein.

4.   <u>Attorneys' Fees</u>

   a.   Attorneys' fees and costs in the amount of $185,000 shall be paid by
        the DOE Defendants.

   b.   Defendants shall issue this payment no later than September 1, 2008.

        (i)    Lawyers for Equal Justice (a tax exempt organization), the sum
               of $58,050.00, which sum Plaintiffs have represented, and for
               purposes of this case Defendants do not dispute, constitutes
               statutory attorneys' fees and costs under 42 U.S.C. Sections
               1983 and 1988.  This allocation or characterization of the fees
               and costs shall have no bearing on any future request for fees
               and costs in the event of further action(s) relating to substantial
               compliance.

        (ii)   American Civil Liberties Union of Hawaii Foundation (a tax
               exempt organization), the sum of $74,298.62, which sum
               Plaintiffs have represented, and for purposes of this case
               Defendants do not dispute, constitutes statutory attorneys' fees
               and costs under 42 U.S.C. Sections 1983 and 1988.  This
               allocation or characterization of the fees and costs shall have no
               bearing on any future request for fees and costs in the event of
               further action(s) relating to substantial compliance.

        (iii)  Alston Hunt Floyd & Ing, the sum of $52,651.38, which sum
               Plaintiffs have represented, and for purposes of this case
               Defendants do not dispute, constitutes statutory attorneys' fees
               and costs under 42 U.S.C. Sections 1983 and 1988.  This
               allocation or characterization of the fees and costs shall have no
               bearing on any future request for fees and costs in the event of
               further action(s) relating to substantial compliance.

        (iv)   In consideration of these payments, Plaintiffs' attorneys and
               Plaintiffs hereby waive all other rights that they may have to
               seek fees and costs against Defendants incurred in this Action,
               except as otherwise provided in this Settlement Agreement.

   c.   With regard to the sums set forth above, the State of Hawaii will issue
        an IRS Form 1099 to Lawyers for Equal Justice (a tax exempt

organization), the American Civil Liberties Union of Hawaii Foundation (a tax exempt organization), and Alston Hunt Floyd & Ing, if that is consistent with the standard practice of the State.  As fees are paid pursuant to statute and as such are the property of the attorneys, no IRS Form 1099 shall be issued by any of the Defendants or the State of Hawaiʻi to any of the Plaintiffs for these fees and costs.

5.    <u>Releases and Covenants Not to Sue</u>

The following mutual releases and covenants not to sue shall become binding as of the Effective Date, but shall be null and void if any of the conditions subsequent set forth in Subparagraph l(b) are not satisfied or if the dismissal contemplated in Paragraph 2 is not entered.

    a.    <u>Release by Plaintiffs</u>.  Plaintiffs Olivé Kaleuati, Kaleuati Kaleuati III, Klayton Kaleuati, Venise Lewis, Raeana Lewis-Hashimoto, Kauilani Lewis-Hashimoto, Alice Greenwood, Daniel Hatchie, individually and/or collectively, for themselves, their heirs, and their assigns, and on behalf of any other persons within the classes certified in this action, hereby covenant not to sue and fully and forever release, waive, and discharge from and for any and all Released Claims, as defined in Subparagraph 5(c) below: each of the Defendants, individually and/or collectively; the State of Hawaiʻi; all state agencies; all present and former state employees; and any of their predecessors, successors, attorneys, insurers, and assigns (hereafter collectively "Defendant Releasees").

    b.    <u>Release of Plaintiffs by Defendants</u>. Each of the Defendants, individually and/or collectively, for themselves, their heirs, and their assigns hereby covenant not to sue and fully and forever release, waive, and discharge from and for any and all Released Claims, as defined in Subparagraph 5(c) below: Plaintiffs Olivé Kaleuati, Kaleuati Kaleuati III, Klayton Kaleuati, Venise Lewis, Raeana Lewis-Hashimoto, Kauilani Lewis-Hashimoto, Alice Greenwood, Daniel Hatchie, and their heirs, attorneys, and assigns (hereafter collectively "Plaintiff Releasees").

    c.    <u>Released Claims</u>. "Released Claims" means any and all claims, counter-claims, demands, causes of action, rights of appeal, costs,

expenses, damages, judgments, orders and liabilities of whatever kind or nature, in equity only, including but not limited to claims for attorneys' fees or costs (all of the foregoing collectively referred to herein as "Claims"), whether now known or unknown, vested or contingent, suspected or unsuspected, that have existed or may have existed, or that do exist as of the Effective Date, that:

  i.  arise out of or in any way relate to any and all Claims or allegations made in the Action; and/or

  ii.  arise out of or in any way relate to any aspect of an entitlement to services under the McKinney-Vento Act.

 d. Nothing contained herein is intended to prevent any Party from enforcing this Settlement Agreement or such other rights as they may be entitled to under the law.

6. <u>Effect of Court Orders</u>

It is understood and agreed by the Parties that upon entry of the Stipulation for Dismissal with Prejudice and Order contemplated in Paragraph 2 of this Settlement Agreement, all orders of the Court in the Action, except those referenced in this Paragraph above and the Order of Dismissal itself, shall no longer have any force or effect.  It is understood and agreed by the Parties that upon the Effective Date, all pending motions and/or appeals shall be deemed to be moot, provided however, that if this Settlement Agreement fails to become effective for any reason or if the dismissal is not filed by the Court then the Parties shall have the right to renew or re-file such motions and/or appeals.

7. <u>Implementation of Changes throughout the Department of Education</u>

The Parties understand and agree that any and all provisions in Exhibit "A" are the obligation of the Defendants designated therein, in their official capacities only, and/or their respective successors, agents or assigns, and are not the responsibility of any other Defendants. Those Defendants, in their official capacities only, represent that they have the authority to make the changes set forth in Exhibit "A." The designated Defendants shall use reasonable, good-faith efforts to substantially implement the policies, procedures, and practices necessary to comply with the requirements of the McKinney-Vento Act by September 1, 2008, and recognize that training is and shall be an ongoing responsibility.

8.    <u>Other Facts</u>

The Parties to this Settlement Agreement acknowledge and understand that it is possible that they, or their agents or attorneys, may discover Claims or facts different from or additional to the ones they presently believe to exist concerning this Settlement Agreement or the Claims compromised or released hereby. Each of the Parties to this Settlement Agreement expressly accepts and assumes the risk of any such different or additional Claims or facts, and agrees that this Settlement Agreement, and the compromises, releases and other provisions hereof, shall remain effective notwithstanding the discovery of any such different or additional Claims or facts.

9.    <u>No Admission of Liability</u>

This Settlement Agreement is entered into in compromise of disputed claims. Neither this Settlement Agreement, nor the releases provided for herein, nor the consideration provided hereunder, nor any other act or agreement in furtherance of this settlement, shall be construed in any way as an admission of liability on the part of any Party to this Settlement Agreement.

10.   <u>Notices</u>

Any notice or communication to any Party to this Settlement Agreement permitted or required to be made hereunder shall be made in writing, with a copy transmitted by electronic mail to those entitled to notice that have notified the others of an electronic mail address. All notices or communications shall be addressed as follows, until further notice:

    a.    <u>If to Plaintiffs</u>:

    Victor Geminiani, Esq.
    Lawyers for Equal Justice
    P.O. Box 37952, Honolulu, Hawaiʻi 96837
    <u>victor@lejhawaii.org</u>

    With copies to:

    Daniel Gluck, Esq.
    ACLU of Hawaiʻi Foundation
    P.O. Box 3410, Honolulu, Hawaiʻi, 96801
    <u>dgluck@acluhawaii.org</u>

Paul Alston, Esq.
Alston Hunt Floyd & Ing
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawai'i 96813
palston@ahfi.com

    b.    <u>If to Defendants</u>:

Randolph R. Slaton
Deputy Attorney General
State of Hawai'i
Tort Litigation Division
425 Queen Street
Honolulu, Hawai'i 96813
Randolph.R. Slaton@hawaii.gov

John Molay
Deputy Attorney General
State of Hawai'i
Department of Human Services Division
425 Queen Street
Honolulu, Hawai'i 96813
John.F.Molay@hawaii.gov

11.    <u>Further Acts</u>

Each of the Parties hereto agrees promptly to execute all other documents and take all other actions reasonably necessary to effectuate all of this Settlement Agreement's terms and conditions.

12.    <u>Compliance and/or Enforcement</u>

    a.    This Settlement Agreement (including, but not limited to, Exhibit "A" hereto) shall be set forth verbatim (except for the signature blocks) in the Stipulation for Dismissal with prejudice and Order Pursuant to Fed. R. Civ. P. 41(a)(l)(A)(ii) and 41(a)(2) or in any other Order of the Court regarding dismissal of the Action ("Settlement Agreement and Order").

b.     The Parties agree that Plaintiffs, including any other person within the class certified in this action, have the right to initiate an action or proceedings to compel substantial compliance with the Settlement Agreement and Order.  In the event of such an action or proceedings, Defendants recognize and agree that the United States District Court for the District of Hawai'i shall have jurisdiction and further agree that Defendants shall not contest the standing of Plaintiffs or of any other person(s) within the classes certified in this action.

c.     The Parties recognize and agree that the United States District Court for the District of Hawai'i shall have jurisdiction to resolve any such claims to compel substantial compliance with this Settlement Agreement, and that the Court's jurisdiction shall be limited to such claims to compel substantial compliance and shall include no other claims, including claims otherwise pendent thereto.  The Parties agree that the Plaintiffs in this case shall have standing to initiate and maintain such an action or proceeding.  In such action or proceeding, the prevailing party in the litigation shall be entitled to seek reasonable attorneys' fees.  In awarding such fees, the Court may, in its discretion, consider the relative success or not of the prevailing party.

d.     The right to institute litigation as set forth in this Paragraph shall terminate on December 31, 2011.

13.    <u>Successors</u>

This Settlement Agreement shall bind the successors, assigns, heirs, agents, employees, and personal representatives of each of the Parties to this Settlement Agreement.

14.    <u>Parties Represented</u>

Each Party to this Settlement Agreement has been advised and represented by counsel in connection with the negotiation and preparation hereof; each Party enters into this Settlement Agreement voluntarily; and each Party to this Settlement Agreement shall be deemed its co-author for purposes of the Settlement Agreement's construction. Each Party further acknowledges that that Party has had an opportunity to review this Settlement Agreement (including the release of all

claims and Exhibit "A" hereto) and to have its language and intended effect explained by an attorney of his or her choice.

15.   Integrated Writing

This Settlement Agreement, including Exhibit "A" hereto, shall constitute the whole and only existing and binding agreement between the Parties to this Settlement Agreement on the subject matters hereof, superseding all prior understandings, whether written or oral as of the Effective Date.  Other than the warranties, covenants, and representations expressly stated as such in this Settlement Agreement, including Exhibit "A" hereto, there are no warranties, covenants or representations of any kind, express or implied, upon which any Party to this Settlement Agreement has relied in entering into this Settlement Agreement, or as to the future relations or dealings of the Parties to this Settlement Agreement.

16.   Amendments

This Settlement Agreement may be modified or amended only by a writing duly signed by the Party to this Settlement Agreement against whom the amendment or modification is to be enforced.

17.   No Waiver

The waiver by any Party to this Settlement Agreement of any right, privilege, covenant or condition hereunder will not operate as or indicate a waiver of any other, or a continuing waiver of the same, right, privilege, covenant or condition hereunder.

18.   Choice of Law

This Settlement Agreement shall be governed by the law of the State of Hawaiʻi applicable to contracts executed and to be wholly performed in that State.

19.   Counterparts

This Settlement Agreement may be executed in any number of counterparts, all of which together shall comprise a single agreement.

EXHIBIT "A"

AGREEMENT REGARDING THE IMPLEMENTATION PLAN OF THE
DEPARTMENT OF EDUCATION OF THE STATE OF HAWAI'I TO COMPLY
WITH THE McKINNEY-VENTO HOMELESS ASSISTANCE ACT

As part of, and in partial consideration for, the Settlement Agreement and Mutual
Release (to which this Exhibit "A" is attached and into which it is incorporated)
entered into by the Parties in settlement of the lawsuit entitled *OLIVE KALEUATI,
individually and on behalf of the class of parents and/or guardians of homeless
children in the State of Hawai'i, et al. vs. JUDY TONDA, in her official capacities
as the State Homeless Coordinator and the State Homeless Liaison for the
Department of Education, State of Hawai'i, et al.,* United States District Court for
the District of Hawai'i, Civil No. 07-504, the Parties agree as follows:

I.     **IDENTIFYING AND INFORMING HOMELESS CHILDREN AND
       FAMILIES**

DOE Defendants agree that they will make reasonable, good-faith efforts to
identify homeless children and youths entitled to receive services under the
McKinney-Vento Act, to provide accurate information to those children and their
families about their rights and options, and to do so in a timely manner.  Such
efforts will include, but are not limited to, the following:

*Complex Homeless Liaisons and DOE Personnel*

    1.     Subject to the availability of funding from the federal government or
the Hawai'i Legislature, DOE Defendants shall employ additional
personnel and/or assign duties to existing employees such that there
are the equivalent of at least two full-time employees as Homeless
Liaisons for Honolulu County, the equivalent of at least one full-time
employee as Homeless Liaison for Hawai'i County, the equivalent of
at least one full-time employee as Homeless Liaison for Maui County,
and the equivalent of at least one half-time employee as Homeless
Liaison for Kaua'i County. For purposes of this Settlement
Agreement, each of these individuals shall be called a "Complex
Homeless Liaison" ("CHL").  Defendants shall submit appropriate
and good-faith budget requests to the State Legislature, and shall
testify appropriately and in good faith before the State Legislature
(both in public and in private, including all communications with
legislators) to secure this funding.  Defendants shall also take

reasonable steps to secure additional funding from the federal government.  Failure to secure this funding shall not be deemed a violation of this Agreement, but Defendants' failure to comply with the requirements of this section may cause Defendants to violate the McKinney-Vento Act and may be grounds for a future suit for violation of the McKinney-Vento Act, United States Constitution, and/or other applicable laws.

2.   DOE Defendants shall identify personnel at each public school to serve as contacts and resources for homeless children and parents. There shall be at least one DOE employee at every public school who is designated within the school as a resource person for questions regarding services to homeless children and their parents or guardians. This individual shall assist the Homeless Liaisons in distributing information and materials to the school and will assist homeless students and parents in working with the Homeless Liaisons and other school personnel as necessary.

3.   DOE Defendants shall train, on an ongoing basis (including yearly training as set forth *infra),* all school-level DOE personnel who have contact with children and/or their parents or legal guardians regarding their obligation to promptly identify any homeless students to the CHL and relevant school personnel or administration. This includes, but is not limited to, training school personnel on how to appropriately inquire into a homeless family's living situation. Training is discussed in greater detail in Section V, *infra.*

4.   Each CHL shall assess that the rights under the McKinney-Vento Act of identified homeless children and youths and their parents and guardians within the school are being met by relevant school personnel to the extent possible. Should the CHL assess that the rights of identified homeless children and youths and their parents and legal guardians at a particular school are not being met, the CHL shall inform the Complex Area Superintendent ("CAS"), who shall ensure that the rights are appropriately met.

5.   The CHLs, in conjunction with administrative staff at the schools, shall identify what resources are necessary for each school to reasonably ensure compliance with the McKinney-Vento Act.

6.      At least once each school year, each CHL shall visit at least 50% of the schools within her or his district to ensure that the needs of homeless students and parents within the school are being met by relevant school personnel to the extent possible.  Each CHL shall visit every school within her or his district at least once every two years. The CHLs will ensure that each person involved in enrolling, transferring or withdrawing students or arranging for transportation for students is kept current on the requirements of the McKinney-Vento Act and/or any Consent Orders or judgments in this lawsuit.

7.      The CHLs, in conjunction with administrative staff at the schools, will ensure that identified homeless children and youths and their parents and legal guardians are provided information necessary to exercise their rights under the McKinney-Vento Act.

8.      Relevant school personnel will be instructed to report any complaints concerning the provision of educational services to homeless children and youths to the appropriate CHL. The CHL will record all such complaints in a single location, organized chronologically.

*Outreach*

9.      For each student who formally exits from a school, who ceases attending a school, who enrolls in a school during the school year, who seeks to transfer schools, or who seeks a geographic exception, DOE Defendants shall inquire of the student and/or his or her parent or guardian whether the request to withdraw, transfer, enroll, or seek a geographic exception is related to homelessness or a loss of permanent housing due to economic hardship.  DOE Defendants shall contact the CHL and follow the requirements of Section II, *infra*, in any case in which school personnel believe the student might be eligible for services under the McKinney-Vento Act.

10.     DOE personnel, including but not limited to the CHLs, shall develop and foster relationships with shelters, social workers, social workers' offices, non-profit agencies, and other individuals and organizations that provide services to homeless and low-income individuals.  DOE Defendants shall develop a plan for meeting with these third-party service providers on a regular basis and, where feasible, personally present information on the McKinney-Vento Act to clients of those

organizations, and DOE Defendants shall present Plaintiffs with this plan no later than July 1, 2008.

11.   Defendants shall develop tools and procedures for identifying homeless students who do not reside in shelters.

12.   DOE Defendants shall develop and implement a communication system whereby new information can be quickly distributed to homeless families.

13.   DOE Defendants shall publish a toll-free telephone hotline number whereby homeless families can obtain information about their rights under the McKinney-Vento Act.

14.   DOE Defendants shall, no fewer than two times per calendar year, publish a half-page (or larger) advertisement in "Street Beat" informing the readership of the rights of homeless families under the McKinney-Vento Act.

15.   DOE Defendants shall also include information on the McKinney-Vento Act (along with contact information for the CHLs) in the yearly DOE supplement to the Honolulu Advertiser and any similar publication.

*Recordkeeping*

16.   DOE Defendants shall develop a uniform monitoring and record-keeping system for homeless children and youths

(i)   DOE Defendants shall keep an electronic record of every homeless child and youth who is identified as homeless by the name of the student or his or her parent or legal guardian.

(ii)   DOE Defendants shall establish and/or utilize a centralized database with information on each child (including school records and school-related health records) so that, should a homeless child or youth wish to enroll in or transfer to a school, DOE can more easily obtain immunization records, including TB clearances, and other records necessary to facilitate such enrollment or transfer

(iii)   All documents and records kept by one CHL shall be available to all other CHL and to the statewide coordinator of the Homeless Concerns Program to ensure that, when a homeless child or youth changes schools, that transition is as smooth as possible and the child and his/her parents or guardians continue to receive the services to which they are entitled.

*Allowable Transfers*

17.   Any child or youth who (a) is or was homeless between October 1, 2005 and the date this Agreement is executed, and (b) transferred schools during that time period for any reason, may be permitted to transfer to a previous school of attendance, provided that it is feasible for the child to attend that school.  Defendants shall make reasonable efforts to inform those homeless children and youths and their parents/guardians who are eligible for this transfer that they are entitled to do so.

*Brochures, Posters, and Other Publications*

18.   DOE Defendants shall develop, produce, and distribute informational brochures or materials concerning the rights of students or parents under the McKinney-Vento Act, including but not limited to the right to immediate enrollment, the right to continue attending one's school of origin, and the right to comparable services, including transportation to and from one's school of origin.

(i)   DOE Defendants will produce brochures in English, Hawaiian, Cantonese, Chukkese, Ilocano, Mandarin, Marshallese, Samoan, Tagalog, Visayan, Vietnamese, and other languages as DOE deems appropriate.  Defendants will use best efforts to produce these brochures as expeditiously as possible, and will provide Plaintiffs with quarterly status updates as to the progress of this production until the brochures are completed. The first report will be due by July 31, 2008.

(a)   These brochures shall be made available at every public school operated by DOE and/or BOE.

(b)     Defendants may satisfy the requirements of the preceding paragraph by uploading the translated brochures to their computer network(s) or to a publicly accessible webpage, so long as these files are accessible by school workers at every public school and school workers are trained on how to access and print those files immediately upon request.  If a public school does not have access to the electronic versions of these brochures or is otherwise incapable of providing a copy of a brochure in any given language to a parent or child, the school must maintain a supply of printed brochures that can be distributed.

(ii)     DOE Defendants will distribute a copy of any such brochure to every child enrolled in public schools along with enrollment materials prior to (or at) the beginning of each school year (or, if impracticable to do so at that time, no later than ten (10) days after the beginning of each school year).  Defendants shall make reasonable efforts to provide each child with a brochure in the language spoken by the child's parent/guardian.

(iii)    Defendants shall use reasonable, good-faith efforts to provide these brochures (on an ongoing basis) to homeless shelters, offices of social services providers, and other locations where homeless children and youths and their parents or legal guardians are likely to see them.

(iv)    These brochures shall indicate the types of transportation options that may be available to a homeless student who lives outside a school's geographic attendance area (including any services actually offered by DOE, which may include public bus passes, mileage reimbursement, curb-to-curb services, and/or modified bus routes) and the telephone number of the CHL.  The goal of this paragraph is merely to inform homeless children and their parents/guardians of the options that *may* be available so that families do not assume that homeless children must transfer schools upon moving.

19.   DOE Defendants shall likewise distribute informational posters concerning the rights of students and parents/guardians under the McKinney-Vento Act.

(i)  DOE Defendants will prominently display in each school office where parents and/or legal guardians transact business with DOE such poster or posters as DOE Defendants or their agents or contractors may have developed or in the future develop advising parents of their and their children's rights under the McKinney-Vento Act

(ii)  Next to or on such poster, DOE Defendants will prominently display the number of the CHL and the telephone number of the hotline for homeless children and youths and their parents and legal guardians maintained by DOE Defendants or their designee(s).

(iii)  DOE Defendants will take reasonable, good-faith steps to provide these posters to homeless shelters, non-profit agencies, offices of social services providers, and other locations where homeless children and youths and their parents or legal guardians are likely to see the posters.

(iv)  DOE Defendants shall conduct regular site visits and/or take other reasonable steps (*e.g.*, inquiring via telephone or e-mail) to ensure that the poster or posters referenced above are prominently displayed in each location in each school office where parents enroll or withdraw students or discuss or document transportation arrangements for students.  Likewise, Defendants shall conduct regular site visits and/or take other reasonable steps (*e.g.*, inquiring via telephone or e-mail) to ensure that the poster or posters are prominently and permanently displayed in shelters, offices of social services providers, and other locations where homeless youths and their parents or guardians are likely to see them.

(v)  Relevant DOE brochures, posters, websites, policies, rules, and forms will consistently and accurately describe Defendants' procedures and policies for enrolling, providing transportation to, and providing education to homeless children and youths.

20.  In any relevant publication or poster designed to inform children and parents/guardians about DOE services for the homeless, DOE Defendants shall provide the hotline number and shall indicate that

homeless children and youths and their parents and guardians should contact the CHL for information specifically related to homeless families.  The publications shall also provide information about the privacy rights of homeless families and unaccompanied youths, as discussed in Section IX, infra.

21.     In any relevant publication, brochure, advertisement, or poster designed (in whole or in part) to inform children and parents/guardians about DOE services for the homeless and written in English, the following message (or a functional equivalent) shall appear in Hawaiian, Cantonese, Chukkese, Ilocano, Mandarin, Marshallese, Samoan, Tagalog, Visayan, Vietnamese, and other languages as DOE deems appropriate:  "This [brochure, poster, publication, etc.] is available in [insert language here].  Contact your school or call [insert phone number of homeless liaison] for a copy."

22.     DOE Defendants shall complete the distribution of posters, brochures, and other materials at the same time as the distribution of enrollment materials prior to (or at) the start of each school year, or if impracticable to do so at that time, no later than ten (10) days after the beginning of each school year.

## II.     ENROLLMENT AND PLACEMENT DECISIONS FOR HOMELESS CHILDREN

DOE Defendants agree to make best efforts to enroll homeless children promptly and to maintain placement in either the school of origin or the school of the attendance area where they are actually living, at the option of parents or guardians.  Accordingly, DOE Defendants shall undertake the following measures: *Revision of Existing Enrollment and Release Forms*

1.     DOE Defendants shall, after consultation with Plaintiffs' counsel

   a.     Develop a protocol for use by all personnel involved in the enrollment process (including but not limited to front-office school staff) to identify those children and youths who are "homeless" within the meaning of the MVA. In meeting the requirements of this section, DOE Defendants shall:

i.      Develop a series of questions to determine MVA eligibility for all children and youths seeking to enroll in school, transfer schools, formally exit a school, or receive transportation to/from school.  DOE Defendants may, but need not, use the list of MVA eligibility questions prepared by the National Center for Homeless Education, available at http://www.serve.ore/nche/dowdoads/briefs/det_elig.pdf.  This series of questions is attached as Attachment "1" to Exhibit "A";

ii.     Present Plaintiffs' counsel with a plan for implementing this protocol, and confer in good faith to address any concerns Plaintiffs may have; and

iii.    By July 31, 2008, fully implement this protocol as it may be modified upon review and consultation among the Parties.

b.     Revise all relevant forms, including but not limited to the DOE enrollment form and geographic exception form, to identify those children and youths who are "homeless" within the meaning of the MVA and inform them of their rights under the MVA.  In meeting the requirements of this section, DOE Defendants shall:

i.      Revise all registration forms (and include a list of questions attached as Attachment "1"), so that the school official completing the forms is required to:

1.     Determine whether the child or youth seeking to enroll qualifies as "homeless" under the MVA, using the protocol in Paragraph III. 1 .a., *supra;*

2.     Inform any child or youth identified as "homeless" and her/his parents or legal guardians of their rights under the MVA, including but not limited to:

a.     The right to immediate enrollment;

b.     The right to immediate, provisional attendance pending receipt of required documentation, such as a proof of address, birth certificate, Social Security card, immunization records, and/or school records.

[This right is subject to proof of tuberculosis clearance pursuant to HRS §302A-1154(b) and HAR §11-157-3.2, along with the requirements of section II.5, *infra*];

    c.    The right to stay in the school of origin;

    d.    The right to participate in school meal programs;

    e.    The right to full participation in school activities; and

    f.    The right to contact the appropriate homeless liaison with any questions; and

    3.    Provide the individual(s) seeking enrollment with contact information (including a toll-free phone number) for the appropriate homeless liaison.

    ii.    By July 31, 2008, cease using old enrollment forms and begin using the newly revised forms, copies of which are attached as Attachment "2" to Exhibit "A."

c.    Revise all computer registration software used to enroll students to require inquiry into the status of the students and their families in order to identify those families who are "homeless" within the meaning of the MVA, and to require the DOE employee to inform homeless children and youths and their parents or legal guardians of their rights under the MVA. In meeting the requirements of this section, DOE Defendants shall:

    i.    Develop software that prompts the DOE user to:

    1.    Inquire as to whether the enrolling student is "homeless" under the MVA;

    2.    Record a student's status as being eligible for MVA services in the school/DOE database(s);

    3.    Inform the homeless child or youth and her or his parents or legal guardians of their rights under the MVA;

4.     Enroll the child immediately, notwithstanding the absence of documentation (such as proof of address, birth certificate, Social Security card, immunization records, and/or school records);

5.     Enroll the child immediately if any question exists as to the child's or youth's eligibility to attend that school;

6.     Contact the appropriate CHL with any questions; and

7.     Provide the individual(s) seeking enrollment with contact information, including a toll-free telephone number, for the appropriate CHL; and

ii.    Develop a method for requiring regular inquiry into the current status of a student previously identified as homeless, so that a child or youth identified as "homeless" at the end of one school year is automatically provided services at the beginning of the following school year if the child or youth is still homeless;

iii.   By June 30, 2008, present Plaintiffs with a plan for meeting the requirements of this section, and confer in good faith to address any concerns Plaintiffs may have; and

iv.   By July 31, 2008, fully implement the requirements of this section.

d.    Review and, where necessary, revise all relevant Administrative Rules to remove barriers to the MVA's requirement that homeless children and youths be permitted to continue attending their schools of origin. In meeting the requirements of this section, DOE Defendants shall:

i.     Review and revise Hawaiʻi Administrative Rules Title 8, Chapter 13 Geographical Exceptions;

ii.    By July 31, 2008, fully implement the requirements of this section.

e.    No later than July 31, 2008, create and implement a protocol for determining whether it is "feasible" for a homeless child or youth to continue attending her or his school of origin.

i.      This protocol may consider the distance from the child's place of residence to the school of origin as one factor in determining feasibility.  Generally, if a child lives within ten miles of her or his school of origin, it ought to be feasible for the child to continue attending her or his school of origin.  Nevertheless, Defendants shall review each child's situation on a case-by-case basis and may determine that there are special circumstances demonstrating non-feasibility based on distance.

ii.     A homeless child shall be permitted to continue attending her or his school of origin, even if Defendants believe that the distance from the child's residence to the school of origin makes attendance unfeasible, if the child's parent/guardian (or if the unaccompanied youth her- or himself) wishes to continue attending the school of origin regardless of the time required to travel to and from the school.  For example, if a high school student becomes homeless during the school year and wishes to commute for two hours each way to graduate with her or his classmates, the student should be permitted to do so.  If the student has frequent absences due to transportation difficulties, however, Defendants may be permitted to require the student to transfer.  However, under these circumstances DOE will not be required to provide or pay for transportation beyond providing a bus pass upon request to the student only.

2.     Nothing in this Agreement shall preclude a registered nurse, doctor, or other health official from conducting a health screening, providing necessary immunizations, or taking  other steps to protect the health of any homeless child or youth and the health of other students and/or school personnel. Any delay in enrollment due to health concerns shall be as brief as possible and shall only be justified if deemed medically necessary by medical personnel.

3.     When a homeless child or youth enrolls in a school, school personnel will immediately request school records and other documents needed from the school the homeless child previously attended.  School personnel will immediately enroll the child or youth (subject to the limited exceptions set forth in Section VIII(C)) while awaiting receipt of relevant records.

*Consultation with Parents/Guardians*

4.   If a completed enrollment or release form indicates that a student or youth's enrollment or release is a result of homelessness, or if a school otherwise identifies a student as homeless, or if a student previously identified as homeless (or her or his parent/guardian) seeks to exit from a school and/or transfer to a new school, school personnel will promptly inform the CHL. School personnel shall immediately inform the identified student and his/her parent or guardian of their rights under the McKinney-Vento Act, including without limitation:

   a.   Information about attending school of origin or enrolling in the attendance area where they are actually living and how parents or guardians or unaccompanied youth can exercise that choice;

   b.   The availability of transportation, how to obtain it and from whom to obtain it. If transportation is to be provided by the DOE Defendants, school personnel and/or the CHL shall assist in making arrangements for transportation;

   c.   Enrollment issues, including how to enroll, and the right of homeless children to be enrolled immediately even if the child is unable to produce records normally required for enrollment;

   d.   The availability of fee waivers and other exemptions, if any, which are applicable to homeless families;

   e.   A description of the services available to homeless children, from whom such services are available, and how to obtain access to such services, including preschool services and extracurricular activities, and information as to whom the student/parent should notify if they wish to participate in these programs;

   f.   The right to initiate the dispute resolution process and how and where the process may be exercised; and

   g.   Contact information for other resources for homeless families, including without limitation the County Homeless Liaison; the office of the statewide coordinator for the Homeless Concerns Program of

the Special Programs Management Section of the Department of Education.

5.      Defendants shall take reasonable steps to protect the confidentiality and privacy of homeless families and shall take reasonable steps to prevent against disclosing to non-DOE personnel that a family or child is homeless, except to the extent that disclosure is required by law.  The privacy rights of homeless families are discussed in more detail in Section IX, *infra*.

6.      DOE Defendants shall honor homeless students' rights under the McKinney-Vento Act, including the rights (a) to attend (subject to proper tuberculosis ("TB") clearance) their school of origin for the duration of homelessness and until the end of any school year in which they find permanent housing; (b) to enroll in school, including attending classes, subject to proper TB clearance, and participating fully in school activities where the school had reasonable notice and an opportunity to plan for such participation immediately, even if the homeless student lacks any or all documentation typically required of students; (c) to be assisted in obtaining immunization records; (d) to have the enrolling school make prompt efforts to obtain previous school records; and (e) to be enrolled in school programs available to children who are not homeless.

   a.      For purposes of this Agreement, Plaintiffs do not contest Defendants' policy of requiring a student to have a TB clearance before participating in school activities.  If a homeless child does not have a TB clearance, Defendants shall undertake reasonable, good faith efforts to assist the child in obtaining the clearance as quickly as possible.  If a child misses more than two days of school while attempting to obtain a TB clearance, Defendants shall provide the child with remedial educational services as follows:

      i.      Class assignments, homework and/or other class projects will be provided to students for absences.

      ii.     While DOE does not administer TB tests, if a TB test cannot be promptly provided because of the fault of the DOE, DOE will use reasonable, good faith efforts to provide tutorial support to help the student keep up with his or her class.

b.    DOE Defendants shall take into account that for many homeless students, instruction may not be appropriate at the location where the child is living and that alternate locations should be arranged and that transportation may not be available from the child's parents.  DOE Defendants will arrange for any compensatory services in a reasonable time and place given the particular circumstances of the homeless child.

## III.   TRANSPORTATION OF HOMELESS CHILDREN

A.    The Parties acknowledge and agree that transportation poses a particular difficulty for homeless families and unaccompanied youth and is essential to ensuring that homeless children receive the educational services to which they are entitled.

B.    The Parties agree that the goal is to provide transportation, without gaps or pauses, such that there is as little disruption as practicable to the homeless child's or youth's education.  Policies and procedures that affect the transportation of homeless children and youths or make it likely that a homeless child or youth might miss school shall be reviewed and revised, as necessary. Where it is not possible for DOE to provide transportation for an identified homeless child or youth every day, the goal will be to minimize any loss of education to the extent possible and to provide transportation as soon as possible.

C.    For those identified homeless children and youths whom the DOE Defendants have the obligation to transport to and from school, the DOE Defendants will make all reasonable efforts to provide transportation (including transportation services to and from school and/or any preschool, summer school, or after or before school activities to which non-homeless children are provided transportation) upon receipt of information that a child or youth is homeless.  The DOE Defendants will make reasonable, good-faith efforts to provide transportation within three school days (exclusive of the date the child is identified as homeless) for each newly identified homeless child or youth enrolled at a public school or for each identified homeless child or youth who requests, and is entitled to, transportation services.

D.    Defendants shall establish and maintain a school bus route along the leeward coast of Oʻahu, north to south from Makaha to Kapolei in the

morning (or prior to the start of school), and reverse – from Kapolei to Makaha – in the afternoon (or after the school day is over). This bus shall stop at homeless shelters, beach parks, and schools as demand dictates.  Defendants shall undertake best efforts to obtain sufficient funding to maintain this route, including (if necessary) testifying appropriately and in good faith before the State Legislature (both in public and private, and including legislative committees) and taking reasonable steps to secure funding from the federal government.  DOE will make reasonable good-faith efforts to implement this bus route as soon as practicable.

E.     Defendants will provide $25,000, by August 1, 2008, to one or more tax-exempt organizations (to be named by Plaintiffs' counsel later), which will use the sum for assisting homeless students and/or their parents or guardians with access to educational services.  The parties intend that the phrase "access to educational services" be construed broadly.  By November 15, 2008 (and subsequently thereafter, quarterly or as agreed by the Parties' counsel), Plaintiffs will provide Defendants with information on how these funds have been used to assist homeless students, and Defendants agree to consider similar funding for subsequent school years if Plaintiffs can demonstrate that the expenditures have produced measurable benefits.  For the 2009-2010 school year, Defendants will notify Plaintiffs by June 1, 2009 as to whether similar funding will be provided.

F.     In providing homeless children and youths with "comparable" transportation services, as required by the McKinney-Vento Act, the following guidelines shall apply:

i.     Defendants shall not require a homeless child who is less than ten years old to ride a public bus (including but not limited to O'ahu's "TheBus," "Hele On" on the Big Island, and/or the County Bus on Maui and Kaua'i) without providing one bus pass to that child's parent, guardian, older sibling, or other adult or older child chosen by the parent or guardian (in writing on a form to be provided by DOE), whom the parent or guardian accepts as being capable of supervising the elementary school-age child; and

ii.     Defendants shall make reasonable, good faith efforts to ensure that no homeless child spends more than one hour in transit (door to door) to or from school.  Defendants may consider the cost of transportation in meeting this requirement.

iii.    When a school bus is unavailable, mileage reimbursement shall always be offered as one transportation option.

1.     A parent or guardian of a homeless child may authorize a non-parent/non-guardian to drive the child to/from school.  Reimbursement forms may be submitted by the parent/guardian or by the driver, according to Defendants' practices.  No driver who seeks reimbursement shall do so as part of any business of transporting children.

G.     The failure of DOE Defendants to provide transportation to an identified homeless child or youth within the guidelines set forth above will not be deemed a violation of this Order to the extent that DOE Defendants have taken appropriate, reasonable, good faith steps to establish transportation within the timeframe set forth above and that DOE Defendants have made a good faith and reasonable effort, in cooperation with the parent/guardian of the homeless child or youth to the extent possible, to resolve the transportation delay.  The Parties agree that if DOE Defendants are repeatedly unable to establish timely transportation for identified homeless children or youths, counsel for the parties may submit the matter to the Court if good faith efforts do not result in a resolution.

H.     In providing transportation for homeless children and youths, DOE Defendants will make reasonable efforts to accommodate the entitlement of homeless children and youth to participate in any preschool, free meal or similar programs, and after or before school activities and extra-curricular events of which DOE Defendants had reasonable notice and an opportunity to plan for participation, where the DOE Defendants provide transportation to such events or programs to children who are not homeless.

I.     DOE Defendants will take reasonable measures to avoid any disruption in the transportation of identified homeless children and

youth for which DOE Defendants are responsible, including reasonable, good faith efforts to ensure that identified homeless children and youth receive transportation on delayed-opening and/or early dismissal school days. DOE Defendants shall also communicate with the homeless child or youth and the homeless child or youth's parent or legal guardian concerning any anticipated transportation problems or difficulties.

J.    Any disruptions in the transportation of a child or youth identified as homeless by a school shall be reported promptly to the CHL.  If an identified homeless child or youth is absent from school for more than three consecutive school days, or if an identified homeless child or youth is absent from school for more than six days in any month, school personnel will report the absence to the CHL, who will inquire into the housing and transportation arrangements of the child or youth and confirm the child's or youth's temporary address and telephone number where possible. The school's registrar will document such absences.

K.    No identified homeless child or youth shall be denied transportation services or any other services under the McKinney-Vento Act due to the child's or youth's absences from school except in the case of appropriately imposed discipline.

L.    The CHL will maintain files concerning inquiries, complaints, denials of or changes to transportation provided to homeless children and youth in a single location. DOE Defendants will adopt records retention guidelines allowing access to necessary records to ensure seamless transition of students between schools serviced by different CHLs.

M.    If a homeless child or youth is absent from or late to school as a result of problems in transportation not the fault of the child or youth or his/her family, DOE Defendants shall not treat the absence or lateness as unexcused and the absence shall not under any circumstances be counted towards a denial of credit for the child, but DOE Defendants may require the student to make up the missed work to achieve the credit provided that the DOE Defendants provide reasonable opportunities for the student to do so. DOE Defendants shall allow the student to make up the work and assignments without penalty.

N.   If a homeless child is absent from school as a result of a lack of transportation caused by DOE, which exceeds three school days in any thirty-day period, DOE Defendants shall make the necessary arrangements to have school assignments, homework and other necessary material provided to the homeless student.  DOE Defendants shall:

    i.   Provide class assignments, homework, and/or other class projects covered during a student's absence; and

    ii.   Use reasonable, good faith efforts to provide tutorial support to help the student keep up with his or her class.

O.   DOE Defendants shall develop a plan for providing appropriate transportation to identified homeless children and youth. This plan shall consider the following issues:

    i.   transportation of homeless children and youths on all islands; and

    ii.   procedures to ensure that every child or youth is provided with transportation as quickly as feasible.

P.   Should DOE Defendants need to execute one or more contracts with third parties to provide these transportation services, DOE Defendants shall execute these contracts no later than September 1, 2008, to the extent allowed under State of Hawaiʻi law.

## IV.   TRAINING OF SCHOOL PERSONNEL

A.   The Parties agree that providing appropriate services to identified homeless children and youths requires that relevant personnel within the DOE and DOH understand the rights and needs of homeless children.  DOE Defendants will assess what training or in-service education is appropriate and will provide such training to all relevant DOE personnel on an annual basis. Appropriate training topics will include, but are not limited to the following: (i) the rights of homeless children and youths and obligations of the DOE under the McKinney-Vento Act; (ii) proper use of the various forms for identifying and providing services to homeless children and youths; (iii) the nature

and scope of services available for homeless children and youths; (iv) the identification of homeless children and youths; (v) the particular educational, social and emotional difficulties and challenges faced by homeless children and youths; (vi) the definition of homelessness under the McKinney-Vento Act; and (vii) the particular needs of unaccompanied youth.

B.    For any training sessions conducted by a DOE Defendant or his/her agent, representative, or outside contractor, each person attending training shall sign an attendance sheet. The CHL and the statewide coordinator of the Homeless Concerns program shall maintain a record of the names of the persons who receive such training, the dates of the training, and copies of any materials used or distributed at the training.

## V.    EVALUATION AND ASSESSMENT

A.    Once each year, the Assistant Superintendent for the Office of Curriculum, Instruction, and Student Support will review the effectiveness of the programs required by the McKinney-Vento Act and this Agreement that are delivered by the DOE in the relevant complex areas.

B.    Such review will be designed to ascertain the extent of the DOE's compliance with all requirements of the McKinney-Vento Act and this Agreement.

C.    Such review will include an assessment of the number of homeless children in the complex areas, the time it takes to arrange for transportation provided by DOE Defendants for homeless children, any issues concerning absences of homeless children, and any other barriers to the educational success of homeless children and youths. This review will also include an analysis of barriers to the enrollment of unaccompanied youths, including an analysis of disciplinary provisions of Chapter 19, Hawaii Administrative Rules, as well as an analysis of ways in which DOE can improve its methods of identifying and serving homeless children.

D.    The Assistant Superintendent for the Office of Curriculum, Instruction, and Student Support will report the results of such review,

and identify any problems, gaps or issues in writing to the State Homeless Liaison Office and the Superintendent.  The Assistant Superintendent for the Office of Curriculum, Instruction, and Student Support will also provide a copy of the individual complex report to the respective CAS.

E.     Defendants shall provide copies of all reports created pursuant to this section between the Effective Date and December 31, 2011 to counsel for Plaintiffs.

## VI.   APPEALS AND DISPUTE RESOLUTION

A.     The Parties recognize and agree that any and all disputes concerning or relating to the education of homeless children and youths must be resolved as expeditiously as possible. The Parties further recognize and agree that identified homeless children and youths and unaccompanied youths are entitled, until the final resolution of any dispute or appeal concerning the enrollment of the identified homeless child or youth, to be immediately enrolled in the school in which enrollment is sought, pending the completion of the dispute resolution process.  The CHL will provide reasonable assistance in the dispute resolution process to the identified homeless child or youth and his/her parent or legal guardian.

B.     If the parent or legal guardian of a homeless child or youth or unaccompanied youth disputes a decision about enrollment, placement, or transportation, including a school's decision that a child is not homeless within the meaning of the Act, DOE Defendants will provide a written explanation of the DOE's decision denying enrollment, placement or transportation, and shall expeditiously and fully inform the parent or legal guardian or unaccompanied youth of their rights under the McKinney-Vento Act for initiating the dispute resolution process and shall provide the parent or legal guardian or unaccompanied youth with the dispute resolution form.  This written explanation shall include information on the rights of homeless families under the MVA, including information on dispute resolution procedures, along with pertinent contact information for assistance (including contact information for the CHL).

C.      A copy of all documents related to the dispute resolution process, including a copy of the DOE's written explanation of denial, shall be provided to and retained by the statewide coordinator of the Homeless Concerns Program.

D.      In any dispute or issue that arises during the term of and under this Settlement Agreement, counsel for the parties will promptly confer in good faith in an effort to resolve any differences. The parties agree that they will cooperate, to the fullest extent possible, to ensure that homeless children and youths are receiving the educational benefits to which they are entitled.

## VII.   MONITORING COMPLIANCE

A.      The DOE Defendants will provide to Plaintiffs' counsel a "Compliance Report," which shall contain sufficient information to allow Plaintiffs' counsel to evaluate DOE Defendants' performance of the various obligations under this Settlement Agreement

B.      The Parties agree to work together cooperatively to provide Plaintiffs' counsel during the term of this Settlement Agreement with such information as may be reasonably necessary to assess and evaluate DOE Defendants' performance of the various obligations under this Settlement Agreement.  Defendants shall make reasonable, good faith efforts to make documents requested by Plaintiffs' counsel available for inspection within a reasonable time (after redaction, if necessary).

C.      The first "Compliance Report" shall be due by December 31, 2008. "Compliance Reports" shall be provided every six months thereafter through December 31, 2011.

## VIII.  REVISION OF POLICIES

A.      DOE Defendants will review and revise any policies, procedures or guidelines that may present barriers to the enrollment, placement, and/or retention of identified homeless children in public schools.

B.      DOH Defendants will review and revise any policies, procedures or guidelines that may present barriers to the enrollment or placement of identified homeless children in public schools.

C.  Notwithstanding the foregoing, nothing in this Settlement Agreement shall preclude a registered nurse, doctor, or other health official from conducting a health screening, providing necessary immunizations, or taking other steps to protect the health of the homeless child or youth, other students, and/or school personnel.  Any delay in enrollment due to public health concerns shall be as brief as possible and shall only be justified if deemed medically necessary by medical personnel.

## IX.  PRIVACY AND STIGMATIZATION OF HOMELESS FAMILIES

A.  Information collected on homeless children and youths and unaccompanied youths, and parents or legal guardians of homeless children and youths pursuant to this Settlement Agreement shall be used solely for the purpose of providing educational services pursuant to the McKinney-Vento Act.  Said information shall be protected by applicable federal and state laws.

B.  All forms, documents, and posters with information regarding the McKinney-Vento Act shall explain the privacy rights of homeless families.

C.  As required by the McKinney-Vento Act, Defendants shall adopt policies and practices to ensure that homeless children and youths are not stigmatized or segregated on the basis of their status as homeless.

## X.  CHARTER SCHOOLS

A.  The Parties agree that the McKinney-Vento Act applies to Hawaii's public charter schools, just as it applies to Hawaii's public non-charter schools.  Nevertheless, because each charter school has its own set of enrollment procedures and practices, the charters schools need not (but may) use the revised enrollment forms, recordkeeping procedures, dispute resolution procedures, and transportation policies as used by the DOE.

B.  Notwithstanding the foregoing, no later than December 31, 2008, Defendants shall send materials and information to the principals and/or other officials at each and every charter school to explain the charter schools' obligations under the McKinney-Vento Act.  The principal and/or other officials at each charter school shall be provided

with all revised enrollment forms, procedures, and protocols so as to enable the charter schools to meet their statutory and constitutional obligations.

## XI.   TUTORS

No funds shall be diverted from tutoring programs that existed on or after October 1, 2007 to pay for anything specifically articulated in this Agreement or otherwise required by the McKinney-Vento Act.

This stipulation is signed by counsel for all parties in this action.  This Court will retain jurisdiction for the purpose of enforcing the Settlement Agreement.

Dated: June 26, 2008                    By:    /s/ Randolph R. Slaton
                                               Randolph R. Slaton

                                               Mark J. Bennett
                                               Attorney General
                                               Randolph R. Slaton
                                               John F. Molay
                                               Deputy Attorneys General
                                               Attorneys for Defendants in their
                                               Official Capacities


Dated: June 26, 2008                    By:    /s/ Daniel M. Gluck
                                               Daniel M. Gluck

                                               Lois K. Perrin
                                               Daniel M. Gluck
                                               Laurie A. Temple
                                               ACLU of Hawaii Foundation

                                               William Durham
                                               Gavin Thornton
                                               Lawyers for Equal Justice

Paul Alston
 Roman F. Amaguin
 Stephen M. Tannenbaum
 Shellie K. Park-Hoapili
 Alston Hunt Floyd & Ing

 Attorneys for Plaintiffs and the
 Plaintiff Classes

APPROVED AND SO ORDERED:



      **/s/ Helen Gillmor**
     Chief United States District Judge

  Kaleuati, et al. v. Tonda, et al., USDC 07-00504 HG/LEK; STIPULATION
FOR DISMISSAL WITH PREJUDICE PURSUANT TO FED. R. CIV. P.
41(a)(i)(A)(2) AND 41(a)(2) AND ORDER